**WADE KILPELA SLADE LLP**
Gillian L. Wade, State Bar No. 229124
gwade@waykayslay.com
Sara D. Avila, State Bar No. 263213
sara@waykayslay.com
Marc A. Castaneda, State Bar No. 299001
marc@waykayslay.com
2450 Colorado Avenue, Suite 100E
Santa Monica, CA 90404
Tel: (310) 667-7273
Fax: (424) 276-0473

Electronically FILED by
Superior Court of California,
County of Los Angeles
8/29/2025 12:10 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Covarrubias, Deputy Clerk

*Attorney for Plaintiffs and the Proposed Class*

[Additional counsel listed on signature page]

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

## UNLIMITED JURISDICTION

| | |
|---|---|
| WILLIAM ABSHIRE and ARMANDO SANCHEZ, each individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATION CASINOS, LLC, a Nevada limited liability company, <br><br> Defendant. | Case No.: 25STCV25547 <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. Violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; <br> 2. Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; <br> 3. Violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; and <br> 4. Unjust Enrichment. <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs William Abshire and Armando Sanchez ("Plaintiffs"), each individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant Station Casinos, LLC ("Defendant" or "Station"). Plaintiffs make the following allegations pursuant to their attorneys' reasonable investigation and on information and belief, except as to the allegations specifically pertaining to themselves, which are based on Plaintiffs' personal knowledge.

## I.    NATURE OF THE CASE

1.    This case concerns Defendant's unlawful practice of luring customers by advertising artificially low prices for hotel rooms that do not include mandatory fees.

2.    Station operates hotels and casinos in Las Vegas that cater primarily to the local market and visitors from neighboring states, including California. This is a competitive business. For years, Station played a trick on its customers in the online booking process to gain market share and get more people to stay at its hotels. Station had a practice of breaking the total cost of its hotel rooms into two components—the base room cost and a mandatory resort fee—while advertising only the base room cost. That is, it advertised only a fraction of the actual price of a room and added the mandatory resort fee later in the booking process. The mandatory resort fee covers services that most consumers assume they get anyway—like access to the gym and use of the in-room phone—as well as services that few customers use—like a shoeshine. In the case of Station's budget-oriented hotels, the mandatory resort fee was (and still is) often more than double the advertised base room cost. While there is nothing wrong with a hotel charging a fee or breaking its prices into components, Station's practice of failing to advertise the total cost of the room, inclusive of the mandatory resort fee, led customers to believe Station's hotel rooms were much less expensive than they truly were.

3.    This is a textbook example of "drip pricing." As the Federal Trade Commission has explained, drip pricing occurs when companies "advertise only part of a product's total price to lure in consumers, and do not mention other mandatory charges until late in the buying process."[1] These fees are deceptive or unfair "because they are disclosed only at a later stage in

---

[1] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022) (hereinafter, "FTC Dark Patterns Report"), https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20%20FINAL.pdf.

the consumer's purchasing process."[2]  "Drip pricing interferes with consumers' ability to price compare. It manipulates consumers into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already has spent significant time selecting and finalizing a product or service plan to purchase."[3]

4.      Because of drip pricing, American customers pay billions of dollars a year in unnecessary, unavoidable, or surprise charges that inflate prices while adding little to no value. These junk fees, which are often not disclosed upfront and only revealed after a consumer has decided to buy something, obscure true prices and dilute the forces of market competition that are the bedrock of the U.S economy. As the Federal Trade Commission notes: "It is no surprise that, once bait-and-switch pricing tactics are used by some businesses to obscure the cost of a good or service, they tend to spread.  Businesses that want to compete on the true price of their offering are undercut by businesses that use hidden or misleading fees to display an artificially low price. As studies confirm, in such instances, consumers cannot shop for price effectively.  This forces businesses into a race to the bottom and results in more and more businesses using hidden and misleading fees to remain competitive."[4]

5.      California law prohibits this practice in multiple ways. *First*, the False Advertising Law ("FAL") prohibits businesses from making or disseminating any statement that is "untrue or misleading" in connection with the sale of goods or services (Cal. Bus. & Prof. Code § 17500). *Second*, the Unfair Competition Law ("UCL") broadly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising" (Cal. Bus. & Prof. Code § 17200). *Third*, a more recent law, SB 478, expressly targeted drip pricing, stating: "This act is intended to specifically prohibit drip pricing, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service." SB 478 amended the Consumers Legal Remedies Act ("CLRA") to make drip pricing illegal under

---

[2] Unfair or Deceptive Fees Trade Regulation Rule Commission Matter No. R207011, 87 Fed. Reg. 67,413 (Nov. 8, 2022),  https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfairor-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011.
[3] FTC Dark Patterns Report.
[4] Trade Regulation Rule on Unfair or Deceptive Fees, 90 Fed. Reg. 2,066 (Jan. 10, 2025) (codified at 16 C.F.R. pt. 464), https://www.govinfo.gov/content/pkg/FR-2025-01-10/pdf/2024-30293.pdf.

the CLRA beginning on July 1, 2024. But in SB 478, the state legislature acknowledged that drip pricing was already separately illegal under California's other consumer protection statutes: "This practice … is prohibited by existing statutes, including the Unfair Competition Law (Chapter 5 (commencing with Section 17200) of Part 2 of Division 7 of the Business and Professions Code) and the False Advertising Law (Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code)."[5] Thus, drip pricing is, *and always has been*, illegal under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and various provisions of California's Consumer Legal Remedies Act ("CLRA"). And, since July 1, 2024, the CLRA has included an additional enumerated provision specifically prohibiting drip pricing.

6.      Station could have complied with all these laws simply by advertising one all-in price to California consumers, inclusive of the base room cost and the mandatory resort fee, throughout the booking process. Station's primary competitors do just that, allowing customers to easily compare what they will pay for a room without navigating beyond the first page in the order flow. Station, on the other hand, deceived prospective customers in California and stifled comparison shopping by advertising artificially low and misleading upfront prices. This is exactly what California lawmakers sought to prevent.

7.      Plaintiff William Abshire booked a room at Durango, a Station-owned-and-operated resort in Las Vegas, on May 7, 2025. Plaintiff Armando Sanchez booked a room at Boulder Station, a Station-owned-and-operated resort in Las Vegas, on July 1, 2023. They were each surprised to learn that the price initially advertised by Station on the Durango and Boulder Station websites, respectively, did not include the mandatory resort fee. Had Defendant disclosed the full and final price of its rooms at the outset—instead of advertising an artificially low initial price and only revealing mandatory fees after Plaintiffs proceeded deeper into the transaction—Plaintiffs would not have booked the rooms at all or would have paid less for them. Plaintiffs were thus misled into transactions they otherwise would not have agreed to and suffered monetary losses in the form of overcharges caused by Defendant's deceptive pricing practices. Plaintiffs also suffered injury in the form of wasted time, loss of the opportunity to make an informed purchasing

---

[5] SB 478(b).

decision, and a reduced ability to comparison shop.

8.     Plaintiffs bring this action individually and on behalf of all others similarly situated, seeking monetary damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for violations of the CLRA, Cal. Civ. Code § 1750, *et seq*., (2) the UCL, Cal. Bus. & Prof. Code § 17200, *et seq*., and (3) the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.* Plaintiffs also seek recovery based on Defendant's unjust enrichment.

## II.    JURISDICTION AND VENUE

9.     This Court has personal jurisdiction over Defendant. Defendant does business in California and otherwise intentionally avails itself of the laws and markets of California by advertising, marketing, and selling its products and services in California and to California consumers. As a result, Defendant has sufficient minimum contacts with California to render the exercise of jurisdiction by the California courts permissible.

10.     This Court has subject matter jurisdiction of this action under the California Constitution, Article VI, § 10, and Code of Civil Procedure § 410.10, because this case is a cause not given by statute to other trial courts.

11.     Venue is proper in this Court because Defendant has conducted business and entered into transactions in this County, and the conduct at issue occurred in, and/or emanated from, this County. Specifically, Plaintiff Abshire's injuries occurred in the City and County of Los Angeles, and Defendant advertises, markets, and sells its products and services in the City and County of Los Angeles.

## III.    PARTIES

12.     Plaintiff William Abshire is an individual consumer who, at all times material hereto, was a citizen and resident of Compton, California.

13.     Plaintiff Armando Sanchez is an individual consumer who, at all times material hereto, was a citizen and resident of Orange, California.

14.     Defendant Station Casinos, LLC is a Nevada limited liability company with a principal place of business in Las Vegas, Nevada.

## IV.   FACTUAL ALLEGATIONS

### A.   California law prohibits drip pricing by requiring sellers to advertise the price that consumers will pay.

15.     As commerce has increasingly moved online, some unscrupulous sellers have relied on manipulative design practices known as "dark patterns" that use psychological tricks to close more sales and charge higher prices.  One such dark pattern is drip pricing, where companies advertise part of the price of a product or service to attract consumers before adding one or more mandatory charges late in the buying process, making it difficult for consumers to compare prices accurately.

16.     The Federal Trade Commission considers junk fees deceptive or unfair because they are disclosed late in the purchasing process, manipulating consumers into paying hidden fees after they've already spent time selecting a product or service.  "Drip pricing interferes with consumers' ability to price-compare and manipulates them into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already has spent significant time selecting and finalizing a product or service plan to purchase."[6]  By then, consumers have already committed to the purchase.

17.     Thus, the FTC warns that companies must "include any unavoidable and mandatory fees in the upfront, advertised price."[7]  "Failure to do so has the potential to deceive consumers in violation of the FTC Act."[8]  Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

18.     California law also prohibits drip pricing.  As explained above, this unfair and deceptive practice has long been prohibited under California law, including under the FAL and UCL. In addition, since SB 478 went into effect, drip pricing—namely, "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" other than taxes and shipping—is one of the enumerated practices expressly prohibited under the CLRA. By explicitly making drip pricing a violation of the CLRA, SB 478 made punitive damages,

---

[6] FTC Dark Patterns Report at 9.
[7] *Id.*
[8] *Id.*

attorneys' fees, and damages available to consumers who bring private enforcement actions based on this unfair and illegal practice.

19.     As the Office of the California Attorney General ("AG") has explained, SB 478 is a "price transparency" law.[9] "Put simply, the price a Californian sees should be the price they pay."[10] "The law requires mandatory fees to be included in advertised prices."[11]  The AG has issued guidance to head off efforts to circumvent this straightforward law, stating that a business *cannot* comply with the law by (a) "advertising a price that is less than what a consumer will actually have to pay, but disclosing that additional fees will be added," (b) "listing or advertising one price and separately stating that an additional percentage fee will apply," or (c) "disclosing additional required fees before a consumer finalizes a transaction."  However, a business can comply with this law by "advertising the total price for a good or service and separately noting that the total price includes certain fees and charges."[12]  "A business is generally free to charge however much it wants and can then provide a breakdown of the various fees that are included in its listed or advertised price.  But *the posted price must include the full amount* that a consumer must pay for that good or service."[13]  "Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive."[14]

**B.      Station's online booking process uses drip pricing to lure customers with an artificially low price.**

20.     During the relevant period, Station's hotel booking process used drip pricing to hide the true price of a hotel room until the customer selected a room for purchase.  This practice was pervasive throughout Station's parent company website, www.stationcasinos.com, and the individual websites for its specific hotels, which are:

---

[9] SB 478 Frequently Asked Questions, California Department of Justice, Office of the Attorney General, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20(B).pdf
[10] *Id.* (emphasis in original).
[11] *Id.*
[12] *Id.*
[13] *Id.* (emphasis added).
[14] *Id.*

(a) www.redrockresort.com;

(b) www.durangoresort.com;

(c) www.greenvalleyranch.com;

(d) www.palacestation.com;

(e) www.sunsetstation.com;

(f) www.boulderstation.com; and

(g) www.santafestation.com (the "Station Websites").

21.     The booking process on the Durango website (www.durangoresort.com) as of May 7, 2025, was representative of the process on all Station Websites during the relevant period.[15] For illustrative purposes, the following paragraphs detail the multiple stages of this process.

22.     During the relevant period, the booking process began with a calendar that listed prices for each day of a particular month for each available room type (the "Availability Calendar Stage"). The prices shown at the Availability Calendar Stage were illusory because they were exclusive of the mandatory resort fee, which was neither disclosed nor referenced at this step of the booking process.

23.     Station's failure to disclose an all-in price (*i.e.*, a price inclusive of, at the very least, the mandatory resort fee) at the Availability Calendar Stage was deceptive and unfair.

24.     Once a customer selects dates for their stay, the customer proceeds to a screen that shows photographs and descriptions of the rooms available to be booked for the selected dates (the "Select a Room Stage"). In the example of the Select a Room Stage screen depicted at **Figure 1**, a one-night stay in a Resort Room at Durango on June 1, 2025, was advertised at $199.00. This price appears in large text. This price matches the price shown at the Availability Calendar Stage. In small text below this price, the screen displays the following text: "$199.00 avg nt rate." Below this is a large button in a contrasting color labeled "Book Room."

---

[15] On or around May 15, 2025, Defendant modified its booking process and now advertises the "all-in" price up front. The new booking process is outside the scope of the claims in this Complaint.

*Figure 1: Select a Room screen in desktop environment (image captured May 7, 2025)*

25.    Below the "Book Room" button in **Figure 1**, the text "Rate Breakdown with daily Resort Fee" appears in small light grey text with no underlining.  The text is difficult to see in this size and color, and nothing about the styling of the text indicates that it is a hyperlink.

26.    Customers using a mobile device to book a room are presented with a slightly different screen at the Select a Room Stage.  The Select a Room Stage screen in the mobile environment is identical to **Figure 1**, apart from the small text below the "Book Room" button.  In the mobile environment, this text merely states: "Rate Breakdown."

27.    Station's failure to disclose an all-in price (*i.e.*, a price inclusive of, at the very least, the mandatory resort fee) at the Select a Room Stage was deceptive and unfair.  It also was an affirmative misrepresentation that misled Plaintiffs and the Class.

28.    At the Select a Room Stage, clicking the text "Rate Breakdown with daily Resort Fee" or "Rate Breakdown" opens a popup window.  If this text is clicked, this popup window is the first sign of the true cost of the room with the $50.85 resort fee and taxes included.  But it offers no safe harbor for Station's failure to disclose an all-in price in a transparent manner.  Most customers will not see the fine print that must be clicked to bring up the popup window, let alone realize it is a hyperlink and choose to click on it.  The text is small, difficult to see, and does not appear to be a hyperlink.  As the Ninth Circuit has cautioned, "just as 'there is no reason to assume that [users] will scroll down to subsequent screens simply because screens are there,' there is no reason to assume the users will click on the settings menu simply because it exists." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1221 (9th Cir. 2019) (quoting *Specht v. Netscape Commc'ns Corp.*,

306 F.3d 17, 32 (2d Cir. 2002) (Sotomayor, J.)). "Only curiosity or dumb luck might bring a user to discover the" breakdown of charges in this popup window. *Wilson*, 944 F.3d at 1221 (citing *Specht*). Moreover, the phrases "Rate Breakdown *with* daily Resort Fee" and "Rate Breakdown" reasonably suggest that the advertised price of $199.00 is *inclusive* of the daily resort fee, not a starting point for further, unincluded charges.

  29. In any case, when a customer clicks the "Book Now" button at the Select a Room Stage, the screen depicted at **Figure 2** appears (the "Reservation Details Stage"). This is when Station "drips" additional cost on the customer. In this example booking, the price increased from $199.00 (as shown at the Availability Calendar Stage and Select a Room Stage) to $275.72 (as shown at the Reservation Details Stage). The increase derives from taxes and a mandatory fee, labeled "Hotel Service Fee Total," which is disclosed for the first time at the Reservation Details Stage after the consumer has already selected the room at a lower price. The "Hotel Service Fee" or "Resort Fee" is not a tax, government fee, postage, or carriage charge; instead, it is a charge for basic hotel services, such as access to the fitness facility and use of the room phone.



*Figure 2: Reservation Details Stage screen (image captured May 7, 2025)*

30.     Station's drip pricing frustrated comparison shopping, impedes competition, and leads consumers to pay more for their hotel rooms than they otherwise would.

31.     When Station springs the resort fee on customers later in the booking process, it disguises the true price of its rooms, making it difficult for consumers to accurately compare prices across different properties.   If Station accurately disclosed its true prices, consumers could compare across similar properties and select the best price.

32.     A comparison of Station's booking process to the process used by another popular luxury hotel in Las Vegas helps illustrate Station's noncompliance with California law and the difficulty it posed for customers attempting to ascertain the true cost of similar hotel stays.  As shown in **Figure 3** below, the Venetian, a luxury hotel-resort of similar quality to Durango, advertises a single price, inclusive of its resort fee, at *all* stages of the online booking process.[16] This practice comports with SB 478 because the advertised price includes "all mandatory fees or charges" other than taxes.  As the California Attorney General expects, "the price a Californian sees [for a room at The Venetian is] the price they pay."[17]



*Figure 3: Venetian select a room screen (image captured May 1, 2025)*

33.     A reasonable consumer would conclude, based on the initial prices advertised by these two properties for the same date, that a room at Durango was $15.00 less than a room at the

[16] These prices were effective as of May 1, 2025.
[17] SB 478 Frequently Asked Questions, California Department of Justice, Office of the Attorney General, available at https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20(B).pdf (emphasis omitted).

Venetian (*i.e.*, $199 and $214, respectively). In reality, the Durango room was more than the room at the Venetian because the price Station initially showed to the consumer did not include the Durango's mandatory resort fee of $50.85. This disparity was difficult to detect because Station used drip pricing to hide a significant portion of the true cost from customers until later in the booking process.

**C.    Plaintiffs purchased from Station.**

34.    On May 7, 2025, Plaintiff Abshire booked a room at Durango using the website, www.durangoresort.com.

35.    Plaintiff Abshire encountered and followed the same booking process depicted and described above in all material respects.

36.    Plaintiff Abshire booked three nights at the hotel, checking in on June 9, 2025, and checking out on June 12, 2025.

37.    Station initially represented to Plaintiff Abshire that the room would cost an average of $220.67 per night before taxes. Plaintiff Abshire believed that would be the total price for the room, exclusive of taxes. At the Reservation Details Stage, Station added a Hotel Service Fee of $50.85, inclusive of taxes, increasing the average nightly rate to $271.52 per night before taxes.

38.    Plaintiff Abshire was misled by Defendant's initial price misrepresentation, which he reasonably relied upon in continuing with the purchase process.

39.    Plaintiff Abshire was operating under a mistake of material fact and/or law regarding the legality of the fee in that he paid the fee without knowing it was unlawful.

40.    Plaintiff Abshire was injured when he was charged and paid a fee that was rendered unlawful when Station advertised, displayed, and offered a price for the room reservation that did not include all mandatory fees or charges other than taxes or fees imposed by a government entity.

41.    If Station had not used hidden fees, Plaintiff Abshire would not have reserved a hotel room from Defendant or would have paid less for it.

42.    Plaintiff Abshire faces an imminent threat of future harm. Plaintiff Abshire would purchase hotel rooms from Defendant again in the future if he could feel sure that Defendant was not using drip pricing. While the current iteration of the booking process on the Durango website

includes the resort fee in the initial price, without an injunction, Plaintiff Abshire has no realistic way of knowing that Defendant will not restart its former practice of adding junk fees later in the checkout process.

43.    On July 1, 2023, Plaintiff Sanchez booked a room at Boulder Station using the website, www.boulderstation.com.

44.    Plaintiff Sanchez encountered and followed the same booking process depicted and described above in all material respects.

45.    Plaintiff Sanchez booked one night at the hotel, checking in on July 1, 2023, and checking out the following day.

46.    Station initially represented to Plaintiff Sanchez that the room would cost $67.31 before taxes. Sanchez believed that would be the total price for the room, exclusive of taxes. At the next stage of the checkout process, Station added a Hotel Service Fee of $31.63, inclusive of taxes, making the actual reservation price $107.69.

47.    Plaintiff Sanchez was misled by Defendant's initial price misrepresentation, which he reasonably relied upon in continuing with the purchase process.

48.    Plaintiff Sanchez was operating under a mistake of material fact and/or law regarding the legality of the fee in that he paid the fee without knowing it was unlawful.

49.    Plaintiff Sanchez was injured when he was charged and paid a fee that was rendered unlawful when Station advertised, displayed, and offered a price for the room reservation that did not include all mandatory fees or charges other than taxes or fees imposed by a government entity.

50.    If Station had not used hidden fees, Plaintiff Sanchez would not have reserved a hotel room from Defendant or would have paid less for it.

51.    Plaintiff Sanchez faces an imminent threat of future harm. Plaintiff Sanchez would purchase hotel rooms from Defendant again in the future if he could feel sure that Defendant was not using drip pricing. While the current iteration of the booking process on the Boulder Station website includes the resort fee in the initial price, without an injunction, Plaintiff Sanchez has no realistic way of knowing that Defendant will not restart its former practice of adding junk fees later in the checkout process.

52.     Consumers like Plaintiffs Abshire and Sanchez reasonably understand Station's advertised prices to disclose the total cost they will pay for their hotel rooms. By unfairly obscuring the true prices, Station deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true prices and fees.

53.     Each Plaintiff sustained a concrete harm when he paid an "illegally appropriated … surplus" in the form of an inadequately disclosed, and thus unlawful, ancillary fee, which is a "classic pocketbook injury." *See Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 636 (2023). That is, each Plaintiff's actual payment of the unlawful fee was a concrete and particularized injury.

54.     In addition, because Station did not disclose an all-in price in the initial listing of prices, each Plaintiff was deprived of information that would have been helpful to understand the total cost of the reservation he selected for purchase and that would have afforded him the opportunity to compare the price and value of this reservation to other hotel rooms he could have purchased. Had Station timely disclosed the true price of the reservations, each Plaintiff would have been able to compare that price to the costs of booking the same or similar room through other platforms or at other hotels.

**D.     Plaintiffs and the Class have no adequate remedy at law.**

55.     Plaintiffs seek damages and, in the alternative, restitution and an injunction. Plaintiffs are permitted to seek equitable remedies in the alternative because they have no adequate remedy at law. Legal remedies here are not adequate because they would not stop Defendant from resuming the practices described above. Plaintiffs' remedies at law are also not equally prompt or efficient as their equitable ones. For example, the need to schedule a jury trial may result in delay. Moreover, a jury trial will take longer and be more expensive than a bench trial.

**V.     CLASS ACTION ALLEGATIONS**

**A.     Class Definition**

56.     Plaintiffs bring the asserted claims on behalf of the following proposed Class:

> All persons who, while in the state of California and within the applicable statute of limitations, booked a hotel room through one of Defendant's websites and paid a resort fee, amenity fee, hotel service fee, or similar mandatory charge.

57.    The following people are excluded from the proposed Class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### A.    Numerosity & Ascertainability

58.    Members of the proposed Class are so numerous that their individual joinder herein is impracticable. The precise number of members of the Class and their identities are unknown to Plaintiffs at this time but may be determined through discovery. For example, Class members can be identified through Defendant's sales records. The Class may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

### B.    Predominance of Common Questions

59.    Common questions of law and fact exist as to all members of the proposed Class, and those questions predominate over questions affecting only individual members. Common legal and factual questions include but are not limited to (a) whether Station's drip pricing is illegal under California consumer protection laws, and (b) what damages and/or restitution are needed to reasonably compensate Plaintiffs and the Class.

### C.    Typicality

60.    Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs and members of the Class sustained damages as a result of Defendant's uniformly illegal, deceptive, and unfair pricing practices.

### D.    Adequacy

61.    Plaintiff Abshire is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class he seeks to represent; he has retained competent counsel experienced in prosecuting class actions; and he intends to prosecute this action

1    vigorously. The interests of the members of the Class will be fairly and adequately protected by

2    Plaintiff Abshire and his counsel.

3        62.    Plaintiff Sanchez is an adequate representative of the Class because his interests do

4    not conflict with the interests of the members of the Class he seeks to represent; he has retained

5    competent counsel experienced in prosecuting class actions; and he intends to prosecute this action

6    vigorously. The interests of the members of the Class will be fairly and adequately protected by

7    Plaintiff Sanchez and his counsel.

8        **E.    Superiority**

9        63.    The class mechanism is superior to other available means for the fair and efficient

10   adjudication of the claims of the Class. Each individual member of the Class may lack the

11   resources to undergo the burden and expense of individual prosecution of the complex and

12   extensive litigation necessary to establish Defendant's liability. Individualized litigation increases

13   the delay and expense to all parties and multiplies the burden on the judicial system presented by

14   the complex legal and factual issues of this case. Individualized litigation also presents the

15   potential for inconsistent or contradictory judgments. In contrast, the class action device presents

16   far fewer management difficulties and provides the benefits of single adjudication, economy of

17   scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class

18   treatment of liability issues will ensure that all claims and claimants are before this Court for

19   consistent adjudication of those issues.

20   **VI.    CLAIMS FOR RELIEF**

21                    **FIRST CAUSE OF ACTION**
     **Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.**
22                        **(By Plaintiffs and the Class)**

23

24       64.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set

25   forth herein.

26       65.    Plaintiffs bring this cause of action on behalf of themselves and members of the

27   Class.

28

66.     As alleged in detail above, Defendant's false and misleading advertising caused Plaintiffs and the Class to purchase Station hotel rooms and to pay a price premium for those rooms.

67.     Plaintiffs and members of the Class are "consumers," as the term is defined by California Civil Code § 1761(d).

68.     Plaintiffs and members of the Class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

69.     Plaintiffs and members of the Class purchased hotel room reservations, which are a "service" within the meaning of California Civil Code § 1761(b).

70.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods or services to consumers.

71.     As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to class members.

72.     As alleged more fully above, Defendant advertised, displayed, and offered a price for a good or service that does not include all mandatory fees or charges. In doing so, Defendant violated, and continues to violate, section 1770(a)(29) of the California Civil Code. Defendant violates this statute by advertising, displaying, or offering prices for its hotel rooms that do not include all mandatory fees or charges (other than taxes, government fees, postage, or carriage charges). Moreover, Defendant's conduct violates subsections 1770(a)(9) of the California Civil Code by advertising goods or services with the intent not to sell them as advertised.

73.     Defendant's price representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers.

74.     Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

75.     Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing the hotel rooms. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decisions.

76.     In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to reserve a hotel room.

77.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and members of the Class.

78.     Plaintiffs and members of the Class were injured as a direct and proximate result of Defendant's conduct because (1) they paid illegal and unfair junk fees, and/or (2) they overpaid for the hotel room reservations because they are sold at a price premium due to the hidden fees.

79.     Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiffs, on behalf of themselves and all other members of the Class, seek damages, restitution, and an injunction against Defendant's unlawful drip pricing practice.

80.     **CLRA § 1782 NOTICE.** On July 21, 2025, a CLRA demand letter was sent to Defendant's headquarters and registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. However, Defendants failed to respond at all to Plaintiff's notice letter within 30 days. Thus, Plaintiff now also seeks an award of restitution, damages, and punitive damages in accordance with Civil Code § 1782(a) of the CLRA.

81.     Plaintiffs are concurrently filing the declaration of venue required by Cal. Civ. Code § 1780(d).

### SECOND CAUSE OF ACTION
#### Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*
#### (By Plaintiffs and the Class)

82.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

83.     Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

84.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, unfair, and fraudulent conduct.

**Unlawful Prong**

85.    Defendant engaged in unlawful conduct by violating the CLRA, the FTC Act, and the unfair prong of the UCL, as alleged above and throughout.

86.    Defendant's drip-pricing scheme violates section 1770(a)(29) and 1770(a)(9) of the California Civil Code.

**Unfair Prong**

87.    Defendant's conduct is unfair because the harm to Plaintiffs and the Class greatly outweighs the public utility of Defendant's conduct.

88.    There is no public utility to springing junk fees on consumers at the last step of the purchase process. Hidden and late-disclosed fees injure healthy competition and harm consumers, and companies could easily disclose any such fees upfront. This injury is not outweighed by any countervailing benefits to consumers or competition.

89.    Defendant violated established public policy by violating the CLRA and the FTC Act, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and the FTCA).

90.    The unfairness of these practices is tethered to legislatively declared policies (that of the CLRA and the FTCA).

91.    Defendant violated established public policy by violating the CLRA and the FTC Act, as alleged above and incorporated here.

92.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

93.    Plaintiffs and the Class could not have reasonably avoided this injury. As alleged above, Defendant's fees were not disclosed until after they selected their hotel rooms for purchase. By then, the harm was done.

**Fraudulent Prong**

94.   Defendant also engaged in fraudulent conduct by misleadingly advertising an upfront price that was lower than the total price—including hidden junk fees—it would ultimately charge.

95.   Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing the hotel room reservation. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decisions.

96.   In addition, classwide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the hotel room reservations.

97.   Defendant's use of hidden fees were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California class.

***Plaintiffs' Economic Injuries***

98.   Plaintiffs and members of the Class were injured as a direct and proximate result of Defendant's conduct because (1) they paid illegal and unfair junk fees, and/or (2) they overpaid for the hotel rooms because they are sold at a price premium due to the hidden fees.

***Relief Sought***

99.   Pursuant to section 17203 of the UCL, Plaintiffs individually and on behalf of the Class seek restitution and an injunction against Defendant's unlawful drip pricing and negative-option marketing practices.

### THIRD CAUSE OF ACTION
**Violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.**
**(By Plaintiffs and the Class)**

100.   Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

101.   Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

102.   Section 17500 of the California Business and Professions Code provides that it is unlawful to make, disseminate, or cause the dissemination of advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to

be untrue or misleading."

103. Defendant violated Cal. Bus. & Prof. Code § 17500 by misleadingly advertising an upfront price that was lower than the total price—including hidden junk fees—it would ultimately charge.

104. As a result of Defendant's violation, Plaintiffs suffered injury in fact and lost money by spending time and money they would not have spent but for Defendant's misleading drip pricing.

105. For Defendant's violation of the False Advertising Law, Plaintiffs seek restitution and an injunction against Defendant's unlawful drip-pricing practices.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(By Plaintiffs and the Class)**

106. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

107. Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

108. Defendant received a benefit at the expense of Plaintiffs and members of the Class when Plaintiffs and members of the Class paid the improperly disclosed fees.

109. Defendant has unjustly retained the benefit conferred on it by Plaintiffs and members of the Class because Defendant procured the benefit through an unlawful, unfair, fraudulent, and misleading drip-pricing technique.

110. For Defendant's unjust enrichment, Plaintiffs and the Class seek restitution of the benefits they paid and that Defendant unjustly retained.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, on behalf of themselves and the proposed Class, Plaintiffs request that the Court order relief and enter judgment against Defendant as follows:

a. An order certifying the asserted claims, or issues raised, as a class action;

b. A judgment in favor of Plaintiff and the proposed Class;

c. Damages, treble damages, and punitive damages where applicable;

d.  Restitution;

e.  Disgorgement, and other just equitable relief;

f.  Pre- and post-judgment interest;

g.  An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

h.  Reasonable attorneys' fees and costs, as allowed by law; and

i.  Any additional relief that the Court deems reasonable and just.

## VIII.  **JURY DEMAND**

Plaintiffs demand trial by jury on all issues so triable.

Dated: August 29, 2025                        Respectfully submitted,

Gillian Wade (SBN 229124)
gwade@waykayslay.com
Sara D. Avila (SBN 263213)
sara@waykayslay.com
Marc A. Castaneda (SBN 299001)
marc@waykayslay.com
WADE KILPELA SLADE LLP
2450 Colorado Avenue, Suite 100E
Santa Monica, CA 90404
Tel: (310) 667-7273
Fax: (424) 276-0473

Edwin J. Kilpela, Jr. (*pro hac vice* forthcoming)
ek@waykayslay.com
WADE KILPELA SLADE LLP
6425 Living Place, Suite 200
Pittsburgh, PA 15206
Phone: (412) 314-0515

Evan E. North (*pro hac vice* forthcoming)
NORTH LAW PLLC
1900 Market Street, Suite 800
Philadelphia, PA 19103
Phone: (202) 921-1651
Email: evan@northlawpllc.com

*Attorneys for Plaintiffs and the Proposed Class*